UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JOYCE A. WALKER**,

    Plaintiff,

v.                                        **CIVIL NO. 08-0396 WJ/CG**

**CARLSBAD MEDICAL CENTER,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

## ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## AND MOTION TO STRIKE

**THIS MATTER** is before the Court upon Defendant's Motion for Partial Summary Judgment filed February 13, 2009 (Docket No. 15) and Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence filed March 23, 2009 (Docket No. 21). By the motion for partial summary judgment, Defendant seeks dismissal of Plaintiff's claim for intentional infliction of emotional distress, dismissal of her claim for *prima facie* tort, and dismissal of Plaintiff's claims for back and front pay to the extent of their accrual after December, 2006. By the motion to strike, Defendant seeks an order striking certain exhibits in support of her response (Docket No. 19) to the summary judgment motion.

### Background

Plaintiff was terminated from her position as a Licensed Practical Nurse with Defendant Carlsbad Medical Center on September 9, 2005. Plaintiff contends that she was terminated rather

than transferred to another position with the company due to her race or age. At the time Plaintiff was terminated, she was fifty-three years old and she is an African-American female. Defendant denies that it terminated Plaintiff because of her age or race and asserts that it offered her another position at the time it closed the office in which she worked. Plaintiff disputes the allegation that she was offered another position.

Plaintiff asserts claims pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §623(a) (ADEA) and pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §2000E-2(a). In addition, she asserts pendant tort claims under New Mexico law for intentional infliction of emotional distress and for *prima facie* tort.

## I. Defendant's Motion to Strike

Defendant moves the Court to strike challenged statements from Plaintiff's affidavit in support of her Response to the Motion for Partial Summary Judgment, which is Exhibit B to Docket No. 19. In addition, Defendant moves the Court to strike the EEOC's Determination of right to sue letter, Exhibit D to Plaintiff's Response to the Motion for Partial Summary Judgment. In support of its motion, Defendant argues that Plaintiff's affidavit is self-serving and contradicts her previous deposition testimony. Defendant further argues that the EEOC Determination letter should be excluded pursuant to Fed.R.Evid. 403 because its probative value is substantially outweighed by the danger of unfair prejudice as it offers a legal conclusion that a violation has occurred and is premised upon a misstatement of fact. The alleged misstatement is that Defendant fired Plaintiff rather than offering her a transfer to another position.

With respect to Plaintiff's affidavit, the Court agrees with Plaintiff that her deposition testimony regarding the effect of her slip and fall injury was incomplete and finds that, in certain respects, the affidavit expands upon and clarifies that testimony. To the extent that the affidavit

contradicts Plaintiff's deposition testimony, that contradiction goes to the weight of the evidence but does not render it a sham which should not be considered in ruling on the motion for partial summary judgment. Accordingly, the Court will not strike Plaintiff's affidavit from the summary judgment record. As to the EEOC Determination letter, the Court notes that the parties dispute the nature of the position offered Plaintiff at the time of her termination. Plaintiff contends that she was only offered a "PRN" position that was not full time and Defendant asserts that Plaintiff was offered a full time position. The Determination letter found that Plaintiff was not offered a transfer.[1]

"Trial courts have discretion in deciding whether to admit EEOC determinations into evidence and refer to them in their findings." Nulf v. Int'l Paper Co., 656 F.2d 553, 563 (10th Cir.1981). In evaluating whether evidence should be excluded on grounds of unfair prejudice, courts should consider the probable effectiveness of a limiting instruction and the availability of less prejudicial, alternative means of proof. See Old Chief v. United States, 519 U.S. 172, 184-85 (1997)("[W]hen Rule 403 confers discretion by providing that evidence 'may' be excluded, the discretionary judgment may be informed not only by assessing an evidentiary item's twin tendencies, but by placing the result of that assessment alongside similar assessments of evidentiary alternatives."); Fed.R.Evid. 403 advisory committee's note. However, "[e]xcluding otherwise admissible evidence under Rule 403 is an extraordinary remedy that should be used sparingly.'" Mendelsohn v. Sprint/United Mgmt. Co., 466 F.3d 1223, 1231 (10th Cir.2006) (internal quotation omitted).

---

[1] In Plaintiff's Response to the Motion to Strike (Docket No. 25), which was filed after Defendant's Reply in Support of its Motion for Partial Summary Judgment (Docket No. 23), she also argues the effect of Defendant's offer of reemployment made February 18, 2008. Response (Docket No. 25) p. 9-10. In effect, Plaintiff seeks a sur-reply to the Motion for Partial Summary Judgment and the Court will not consider those arguments.

In this case, the EEOC letter offers a conclusion at odds with Plaintiff's deposition testimony and Defendant's position, the latter of which is supported by an affidavit. Defendant's Motion for Partial Summary Judgment (Docket No. 15), Ex. B, Affidavit of Tonk Chester. The EEOC Determination found that "No evidence was obtained to show that Charging party was offered a transfer or declined such an offer." Plaintiff's Response to Motion for Partial Summary Judgment (Docket No. 19), Exhibit D. This finding was made despite Defendant's letter response to the EEOC's request for more information made the month before the determination, in which Defendant, through counsel, affirmed that Plaintiff was offered another position by Keith Spartenberg, Director of Pecos Valley of New Mexico, and Tonk Chester, Director of Human Resources. Defendant averred that it has no documents evidencing that offer, but that the offer was made in a meeting with Plaintiff on September 9, 2005. Plaintiff's Response to Motion for Partial Summary Judgment (Docket No. 19), Exhibit C, p. 1. There is no indication in the Determination letter that the EEOC heard witnesses, made credibility determinations or weighed the evidence supporting the assertions of the parties. The extent of the investigation and the materials examined in making the determination are not indicated. Under these circumstances, the Court finds that the danger of unfair prejudice outweighs the probative value of the EEOC Determination letter. The testimony of Tonk Chester, Keith Spartenberg, Plaintiff, and the other employees of the closed clinic offer alternative means of proof of the circumstances of Plaintiff's termination and will permit the jury to assess the credibility of the witnesses. Defendant's Motion to Strike will be granted to the extent that the Court will not consider the EEOC's Determination letter for the purpose of deciding the summary judgment motion.

**II.     Summary Judgment**

A.     <u>Standard of Law</u>

Summary judgment is appropriate when there exists no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S. H. Kress & Co., 398 U. S. 144, 157 (1970). If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish the existence of a material, factual dispute. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U. S. 574, 585-87 (1986). To establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of his pleadings, rather, he is required to offer evidence in the form of affidavits or other admissible evidence demonstrating that a genuine issue of material fact remains for the fact finder to resolve. Fed. R. Civ. P. 56(e); Matsushita Elec., 475 U. S. at 596-87. In other words, a party opposing summary judgment "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof." Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir.1996). Mere allegations, without more, are insufficient to avoid summary judgment. Lawmaster v. Ward, 125 F.3d 1341, 1349 (10th Cir.1997).

In determining whether summary judgment is appropriate, the Court will not weigh the evidence and determine the truth but rather determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. However, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

B.   Count III – Intentional Infliction of Emotional Distress

Defendant asserts that Plaintiff's claim for intentional infliction of emotional distress must be dismissed because the actions at issue were not extreme and outrageous as a matter of law. Under New Mexico Law, the following elements must be proven to establish a claim of intentional

5

infliction of emotional distress: "[i] the conduct in question was extreme and outrageous; [ii] the conduct of the defendant was intentional or in reckless disregard of the plaintiff; [iii] the plaintiff's mental distress was extreme and severe; and [iv] there is a causal connection between the defendant's conduct and the claimant's mental distress." Trujillo v. N. Rio Arriba Elec. Coop., Inc., 41 P.3d 333, 343 (N.M. 2001). For purposes of the tort of intentional infliction of emotional distress, New Mexico law adopts the Restatement Second of Torts' definition of extreme and outrageous conduct. See id. According to the Restatement, extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement Second of Torts § 46 cmt. d. See U.J.I. 13-1628 N.M.R.A.2001 ("Extreme and outrageous conduct is that which goes beyond bounds of common decency and is atrocious and intolerable to the ordinary person.").

While the Court does not want to minimize in any way the adverse impact on an individual who has been terminated from his or her job, "[b]eing fired is a common occurrence that rarely rises to the level of being 'beyond all possible bounds of decency' and 'utterly intolerable in a civilized community.'" Trujillo 41 P.3d at 343. In her complaint, Plaintiff claims severe emotional distress that goes beyond the bounds of common decency and is atrocious and intolerable to the ordinary person. Complaint (Docket No. 1), ¶¶30, 33, 34, 25. The complaint offers no facts in support of this assertion, apart from Plaintiff's allegations that she was treated differently because of her race and age. Complaint (Docket No. 1), ¶¶ 15, 22. In response to Defendant's Motion for Summary Judgment, Plaintiff argues that "living with the disgrace of being considered and treated as less than a person based solely upon one's race creates issue (sic) as to an emotional distress with which no normal person should be required to cope." citing Trujillo. Response to Motion for Partial Summary

6

Judgment (Docket No. 19), p. 13. However, that case merely holds that a trial court should determine as a matter of law whether the conduct at issue reasonably may be regarded as so extreme and outrageous that it will permit recovery and that when reasonable persons might differ on that question it is for the jury to decide. Trujillo, 41 P.3d at 343. Any violation of federal or state law is not automatically behavior that can be the basis of an intentional infliction of emotional distress claim. Gioia v. Pinkerton's, Inc., 194 F.Supp.2d 1207, 1221 n. 10 (D.NM 2002). This Court is not willing to hold, without any authority for the proposition, that Plaintiff's Title VII discrimination claim automatically supports a claim for intentional infliction of emotional distress as well.

In addition to pleading extreme and outrageous conduct, Plaintiff must also allege extreme and severe emotional distress. "Extreme and severe emotional distress means that a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances." Trujillo 41 P.3d at 343. Defendant asserts that Plaintiff has not provided any evidence that she has suffered severe emotional distress, a contention Plaintiff does not address in her response to the motion for summary judgment. Her complaint contains a bare-bones assertion she suffered severe emotional distress. Complaint (Docket No. 1) ¶30. Evidence showing an employee felt lousy and depressed, was prescribed an anti-depressant, slept long hours and developed erratic eating habits is insufficient to establish severe emotional distress. Trujillo, 41 P.3d at 343. Similarly, evidence that emotional distress caused a plaintiff to feel like vomiting, caused her to have between five and ten nightmares, caused her to lose sleep, led her to seek medical assistance, led her to take some sample medications her physician provided, and prevented her from caring for her children for a month because she was too tired and emotionally distracted to do so has been held to be insufficient to support an intentional infliction of emotional distress claim. EEOC v. University of Phoenix, 505 F.Supp.2d 1045, 1062-63 (D.NM 2007). In University of Phoenix the

District Court cited Dominguez v. Stone, 638 P.2d 423, 426 (NM.App.1981), which held "Emotional distress. . . includes all highly unpleasant mental reactions, such as. . . horror, . . . humiliation, embarrassment . . . and nausea. It is only where it is extreme that the liability arises. . . ." In this instance, Plaintiff has not responded to the motion for summary judgment with any evidence of the sort of severe emotional distress which is required to support a claim for intentional infliction of emotional distress. Because she has not shown extreme and outrageous conduct which goes beyond all bounds of human decency and because she has failed to provide evidence of severe emotional distress of the sort required to support in intentional infliction of emotional distress claim, Defendants are entitled to summary judgment on Count III of the Complaint.

C.	Count IV – *Prima Facie Tort*

**Count IV *Prima Facie* Tort**

Defendant asserts that Plaintiff was an at-will employee whose employment was terminable by either party at any time for any or no reason. Defendant further contends that, as an at-will employee, Plaintiff cannot assert a claim under the doctrine of *prima facie* tort. Alternatively, Defendant contends that Plaintiff's allegations in support of her *prima facie* tort claim are duplicative of her other grounds for relief, rendering the doctrine unavailable to her as those facts fall within the scope of other established torts. Plaintiff responds that *prima facie* tort may be pled in the alternative but does not address Defendant's assertion that she was an at-will employee.

In New Mexico, employment is terminable at will absent an express contract to the contrary. See Lopez v. Kline, 953 P.2d 304, 306 (N.M.App.1997). However, an implied contract will override the presumption of at-will employment. Hartbarger v. Frank Paxton Co., 115 N.M. 665, 857 P.2d 776, 780 (1993). Whether an implied contract was created is generally a question of fact. Id. Thus, only if the evidence is insufficient to create a genuine issue of material fact regarding whether an

implied contract was established is summary judgment appropriate. Fed.R.Civ.P. 56( c); see Shull v. New Mexico Potash Corp., 111 N.M. 132, 802 P.2d 641 (1990) (affirming summary judgment in favor of employer that there was no implied contract).

In this instance, Plaintiff presents no evidence to counter Defendant's assertion that she was an at-will employee. Given that the assertion is an undisputed material fact, Plaintiff's claim must be dismissed as New Mexico law does not recognize a claim for *prima facie* tort in employment-at-will situations. Cordova v. PNM Elec. and Gas Services, 72 Fed.Appx. 789 (10th Cir. 2003)(unpublished disposition) (citing Ewing v. State Farm Mut. Auto. Ins. Co., 6 F.Supp.2d. 1281, 1291 (D.N.M.1998); Yeitrakis v. Schering-Plough Corp., 804 F.Supp. 238, 249 (D.N.M.1992); Hill v. Cray Research, Inc., 864 F.Supp. 1070, 1079 (D.N.M.1991); and Schmitz v. Smentowski, 109 N.M. 386, 785 P.2d 726, 738 (N.M.1990)).

D.   Claims for Back Pay

Defendant argues that Plaintiff's claims for back pay under the ADEA and Title VII must be dismissed, either because she suffered a slip-and-fall accident unrelated to her employment in December, 2006 which rendered her unable to work or because she rejected Defendant's offer to reinstate her made in February, 2008. Defendant notes that it had no knowledge of Plaintiff's medical status at the time it made the offer of reinstatement. In addition, Defendant asserts that Plaintiff has failed to mitigate her damages by diligently seeking work. Plaintiff contends that the facts are disputed regarding whether and to what extent she can work after her injury in December, 2006. She also argues that there is an issue as to whether she would have suffered the injury absent her termination. Further, Plaintiff argues that the offer of reinstatement, which did not include back pay incurred to that time, would not have made her whole and does not serve to preclude her from recovering back pay in this suit.

"A plaintiff's unreasonable rejection of an unconditional offer of reinstatement will cut off an employer's liability for damages as of the date the offer is rejected or expires." Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1253 (10th Cir.2004) (citing Ford Motor Co. v. EEOC, 458 U.S. 219, 230-32 (1982)). Plaintiff cites Camacho v. Colorado Electronic Technical College, Inc., 590 F.2d 887, 889 (10th Cir. 1979), for the proposition that an offer of reinstatement without back pay does not relieve an employer from further liability. This proposition was relied upon in EEOC v. Ford Motor Co., 645 F.2d 183, 192(4th Cir. 1981) which cited Camacho. However, the holding of the Fourth Circuit Court of Appeals was reversed in Ford Motor Co. v. EEOC, 458 U.S. 219 (1982). There the Supreme Court held that an unemployed or underemployed claimant forfeits her right to back pay if she refuses a job substantially equivalent to the one she was denied. Ford, 458 U.S. at 232. If she accepts the unconditional offer of employment, she remains entitled to full compensation if she wins her case- such compensation consisting of back pay accrued prior to the effective date of the offer of employment, retroactive seniority, and compensation for any losses suffered as a result of lesser seniority before the judgment in her favor. Id. at 233-34. Nonetheless, an offer of reinstatement minimizes damages even without a supplemental offer of back pay, since a claimant would be required to accept another employer's offer of a substantially similar job in mitigation of her damages and such an offer would not include such a lump sum bonus. Id. at 233, n. 19.

The reasonableness of a rejection must be examined in the light of the circumstances surrounding the offer and refusal. Albert, 356 F.3d at 1253 (citing Giandonato v. Sybron Corp., 804 F.2d 120, 124 (10th Cir.1986)).  The employer bears the burden to prove it made an unconditional offer of reinstatement and that the plaintiff's rejection of it was objectively unreasonable. Saladin v. Turner, 936 F.Supp. 1571, 1582 (N.D.Ok 1996) (citing Smith v. World Ins. Co., 38 F.3d 1456,

1465 (8th Cir.1994)). In this case, on February 18, 2008 Defendant wrote to Plaintiff that "Carlsbad is willing to accept Ms. Walker back into its employ in a position with similar responsibilities, compensation, and benefits to those she enjoyed in her previous position. If you have any questions or concerns, please do not hesitate to contact me." Defendant's Motion for Partial Summary Judgment (Docket No. 15), Exhibit D. In response, Plaintiff, through counsel, declined the offer and indicated that she wished to file suit. Id. In her Response to the motion for partial summary judgment (Docket No. 19), Plaintiff offers the "additional material fact" that she was never offered a full time LPN position following her termination, citing Exhibit A to that pleading, her deposition, at page 72 and her own affidavit attached as Exhibit B.  Page 72 of Plaintiff's deposition contains questions and answers regarding injuries she suffered after her termination and does not discuss job offers. However, on page 68 of her deposition, Plaintiff stated that she disagreed that she had been offered a full time position in 2007. Plaintiff's Response to Motion for Partial Summary Judgment (Docket No. 19), Exhibit A, p. 68. When asked if she was willing to return to employment in February, 2008, Plaintiff responded she did not have any knowledge of Defendant's offer. Id. at 69. Plaintiff's recollection is at odds with the representation her counsel made to Defendant's counsel; regardless, knowledge of the unconditional offer is imputed to her. See Link v. Wabash R.R. Co., 370 U.S. 626, 634 (1962) ("[In] our system of representative litigation, . . . each party is. . . considered to have notice of all facts, notice of which can be charged upon the attorney"); also see Sawyer v. Burton, 237 P.2d 77, 81 (N.M. 1951) (Holding that knowledge of any material fact possessed by the attorney representing a party in a purchase was knowledge of the party himself).

In this case any award of back pay to Plaintiff is limited by her rejection of the offer of reinstatement. She may be entitled to back pay and compensation for losses from the period of September 9, 2005, the date of her termination, to April 9, 2008, the date she rejected the offer of

reinstatement. However, she is not entitled to back pay from April 9, 2008 onward in time.

Defendant also contends that Plaintiff's claims for back pay are limited by her failure to mitigate her damages by seeking other work and by injuries which she suffered in December, 2006. At that time, Plaintiff suffered a slip and fall, injuring her ankle. Defendant points to Plaintiff's deposition testimony that the ankle injury limited her ability to work and another injury also prevented her from seeking work. Plaintiff argues and this Court finds that the facts are disputed as to whether and to what extent she can work. That dispute precludes a grant of summary judgment. Similarly, at this time and given the limited record before it, the Court will not grant summary judgment on the question of whether Plaintiff diligently sought other employment and thus mitigated her damages. The extent of Plaintiff's injuries and those injuries affect on her ability to seek or perform work are subject to proof at trial and may affect Plaintiff's entitlement to back pay from December, 2006 to April 2008.

E.      Claims for Front Pay

Plaintiff also seeks front pay. Complaint (Docket No. 1), p. 5. Front pay is intended to compensate a plaintiff for wages and benefits she would have received from a defendant employer in the future if not for discrimination. Julian v. City of Houston, Texas, 314 F.3d 721, 729 (5th Cir. 2002). Reinstatement is the preferred remedy under the ADEA, but front pay is available to compensate an ADEA plaintiff when reinstatement is not appropriate. See EEOC v. Prudential Fed. Sav. & Loan Ass'n, 763 F.2d 1166, 1172 (10th Cir. 1985). "[A]n award of future damages in lieu of reinstatement furthers the remedial purposes of the ADEA by assuring that the aggrieved party is returned as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct." Id. at 1173. Awards of front pay must be carefully crafted to avoid a windfall to a plaintiff, as they are not meant to be punitive. Palasota v. Haggar Clothing Co., 499

F.3d474, 491 (5th Cir. 2007). An employee's refusal to accept reinstatement does not automatically preclude an award of front pay if she has valid reasons for the refusal. Giandonato, 804 F.2d at 124. Plaintiff has offered no reasons for her refusal of the offer of reinstatement and disputes Defendant's argument that she is not able to return to work due to injuries suffered after her termination. Under these circumstances, front pay would be inappropriate and the Court grants Defendant's motion for summary judgment on this issue.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence is granted in part. The Court has not considered the EEOC's Determination of right to sue letter, Exhibit D to Plaintiff's Response to the Motion for Partial Summary Judgment, in ruling on Defendant's Motion for Partial Summary Judgment.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment is granted in part. Count III of the Complaint alleging Intentional Infliction of Emotional Distress and Count IV of the Complaint alleging *Prima Facie* Tort are dismissed. The Court holds as a matter of law that Plaintiff is not entitled to back pay after April 9, 2008 and that she is not entitled to front pay.

_____
UNITED STATES DISTRICT JUDGE